**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA      :

      v.                :      **3:24-CR-239**

BRYANT WILSON,          :    **(JUDGE MANNION)**

     Defendant       :

## <u>MEMORANDUM</u>

Presently before the Court is Defendant, Bryant Wilson's, motion to dismiss his indictment (Doc. 48). For the reasons that follow, the motion will be **DENIED.**

## 1. <u>BACKGROUND</u>

On November 28, 2021, Defendant Wilson, an inmate incarcerated at United States Penitentiary in Canaan Township in Pennsylvania (USP Canaan), killed a fellow inmate with a shank—a handcrafted weapon. The Government argues that a sudden quarrel arose in the common area of the housing unit, during which Mr. Wilson acted in a heat of passion when killing the other inmate. The Defense counters that Mr. Wilson was merely acting in self-defense, repelling an incoming assault that was planned and premediated by the decedent the evening prior. The entire incident was captured on video.

That same day, an incident report was filed by the Bureau of Prisons (the "BOP") at USP Canaan, and Mr. Wilson was moved to the Special Housing Unit (the "SHU") where he has remained since. Soon after the incident, the BOP at USP Canaan referred the matter for criminal prosecution. Nearly three years later, on September 10, 2024, a grand jury indicted Mr. Wilson on voluntary manslaughter in violation of 18 U.S.C. §1112 and possession of contraband in prison in violation of 18 U.S.C. §1791. Such an indictment was returned within the statute of limitations.[1]

Since the indictment, Mr. Wilson has filed several motions to continue trial (Docs. 13, 17, 21, 25, 33, 38, and 43), two requests for new counsel, and numerous miscellaneous *pro se* filings. The instant motion was filed on July 18, 2025 (Doc. 48), has been briefed by both parties, and is now ripe for disposition.

## 2. DISCUSSION

Defendant argues that the delay in bringing forth the indictment violated his due process rights under the Fifth and Sixth Amendment. The Court disagrees.

---

[1] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. §3282.

## A. Due Process Rights Under the Fifth Amendment

The Supreme Court has held that, under Fifth Amendment Due Process Clause considerations, the court must dismiss an indictment "even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." *United States v. Gouveia*, 467 U.S. 180, 192 (1984). However, "the statute of limitations is the 'primary guarantee against bringing overly stale criminal charges[.]'" *United States v. Ladson*, 238 F. App'x 874, 876 (3d Cir 2007) (quoting *United States v. Marion*, 404 U.S. 307, 322 (1971)).

Proof of actual prejudice is "a necessary but not sufficient element of a due process claim, and ... the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco*, 431 U.S. 783, 790 (1977). "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution." *Marion*, 404 U.S. at 322. Accordingly, the court must undertake "a delicate judgment based on the circumstances of each case[ ]" in order to "accommodate the

sound administration of justice to the rights of the defendant to a fair trial[.]" *Id.* The Third Circuit has further held that "[t]he mere possibility of prejudice inherent in any extended delay, or the mere possibility that a witness might become inaccessible and evidence be lost, is not sufficient." *United States v. Ismaili*, 828 F.2d 153, 168 (3d Cir. 1987).

On the record before the Court, there is not sufficient evidence showing that Mr. Wilson suffered actual prejudice due to being administratively detained in the SHU for nearly three years until he was indicted. Mr. Wilson argues that a certain video of an interaction between himself and the decedent the evening prior to the incident was destroyed when it allegedly would have evinced the decedent's plan and premeditation to assault and kill Mr. Wilson. However, Mr. Wilson has not explained how his time in the SHU led to the destruction of the video, or how even this video would display what he purports. Actually, based on Mr. Wilson's recorded interview with the FBI regarding that particular interaction, Mr. Wilson claimed that all the video shows is that "[l]ater on that night, you'll see [Mr. Wilson] at the ironing board about 7:55, [when the other inmate] approaches [him]; [they] talk for about 25-30 minutes; [they] shake hands a couple of times … it's supposed to be dead; [they] squashed it." (Doc. 55, at 04:42-04:57). As correctly noted by the

Government, a video of Mr. Wilson and the decedent talking for a while, making amends, and shaking hands "a couple of times" is not readily demonstrative of the "best evidence" of the decedent's alleged plan to assault and kill Mr. Wilson. Furthermore, the Supreme Court in *Marion* noted that relying "solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost[,]" is insufficient to show that Mr. Wilson was actually prejudiced. Thus, Mr. Wilson's assertions of prejudice from a lost video falls short because it is only an assertion of possible prejudice inherent in the passage of time. Mr. Wilson has not shown what real effect the discovery of any such evidence would have had on an eventual trial. *See also United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985) (in dicta noting that defendant had failed to show actual prejudice where "allegations that witnesses would have provided an alibi that are not targeted quite specifically to the time and location of the alleged offense."). Even more damning, the Government has asserted that the Bureau of Prisons has located the video of the interaction near the ironing board in response to the Defendant's request, and will promptly turn the evidence over to him. Accordingly, to the extent this motion is predicated on this claim, it is denied.

## B. Due Process Rights under the Sixth Amendment

The Sixth Amendment states: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This guarantee attaches at a defendant's arrest or indictment, whichever comes first, because it does not "require the Government to discover, investigate, and accuse any person within any particular period of time." *Marion*, 404 U.S. at 313; *see id.* at 321 (declining to extend the constitutional speedy trial right "to the period prior to arrest"); *United States v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014).

Federal criminal defendants also have a related statutory right under the Speedy Trial Act. Section 3161(b) of the Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. §3161(b). If the Government fails to file the information or indictment within thirty days, "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. §3162(a)(1).

The grand jury returned the indictment on September 10, 2024. (Doc. 1). Mr. Wilson was arraigned on September 25, 2024. On its face,

the record does not suggest any violation of Mr. Wilson's rights under the Speedy Trial Act. Mr. Wilson, however, argues that his placement in the SHU subsequent to the related events "is akin to an arrest, at which time his right to a speedy trial commences." (Doc. 48, at 3). This particular argument has been positively rejected by the Third Circuit in *United States v. Bailey-Snyder*, 923 F.3d 289, 293 (3d Cir. 2019).

In *Bailey-Snyder*, the inmate argued that his placement of ten months in administrative segregation while he was under investigation for a new crime triggered the start of the speedy trial clock. *Id.* at 292. The Third Circuit flatly rejected that argument, explaining that "[u]nlike police and prosecutors, the Bureau of Prisons does not operate in a prosecutorial posture when it decides to place prisoners in administrative segregation. Such decisions are not dependent on a decision to prosecute.... Prison officials instead segregate inmates for myriad of reasons, including: investigation, discipline, protection, prevention, and transition." *Id.* at 293 (citations omitted). Defense attempts to counter this controlling precedent by claiming that Mr. Wilson's case is distinguishable because he was segregated for a longer period of time, which allegedly surpassed the appropriate amount of time for his offense. (Doc. 50, at 5) ("Per the CFR, the punishment for "killing" ... is up to 60 days in disciplinary

segregation."). However, the duration or rationale for segregation are not germane to the Third Circuit's distinction between the Bureau of Prison and the prosecuting authorities. These are separate entities, and as the Third Circuit explained, "[n]either the United States Attorney nor the FBI orders these placements and they are not typically notified when such placements are made." *Bailey-Snyder*, 923 F.3d at 293. If Mr. Wilson takes issue with his disciplinary segregation, "SHU placements have their own administrative review and appeals process." *Id.* (citations omitted). The length or validity of his segregation may not be impinged on the prosecutor or trigger his constitutional and statutory rights to a speedy trial. Accordingly, to the extent this motion depends on this claim, it is denied.

### 3. **CONCLUSION**

Based on the foregoing, the Court will **DENY** Defendant's motion to dismiss his indictment (Doc. 48). An appropriate order follows.

**Malachy E. Mannion**
**United States District Judge**

**Dated:** 8/20/25
24-239-01