UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :

v.  :  CRIMINAL NO. 3:24-239

BRYANT WILSON,  :  (JUDGE MANNION)

Defendant  :

**MEMORANDUM**

Pending before the court is the Government's motion *in limine* to preclude the testimony of Mr. Paul Gibson, a prison expert for the defense. (**Doc. 69**). For the reasons stated herein, the Government's motion will be **GRANTED**, and the witness will be precluded from testifying.

**I.   BACKGROUND**

Defendant Bryant Wilson (hereinafter "Defendant") is charged with voluntary manslaughter, in violation of 18 U.S.C. §1112, and possession of contraband in prison, in violation of 18 U.S.C. §1791(a)(2), following a prison fight at USP Canaan that resulted in the stabbing death of Defendant's victim on November 28, 2021. (Doc. 1). Defendant does not contest that the fight happened, nor that the death of his victim resulted; rather, he asserts that he acted in self-defense.

On October 17, 2025, Defendant notified the Government that he wishes to offer the expert testimony of Gibson at trial, pursuant to Rule 702

of the Federal Rules of Evidence. (Doc. 69-1). He indicated that Gibson would testify to the following:

1. It is proper procedure for correctional officers at a high security USP, including USP Canaan, to secure the area and request the assistance of additional staff before breaking up a physical altercation between inmates.
2. At a USP, it is common for other inmates to join an attack on another inmate after it has been initiated.
3. High security USPs, including USP Canaan, is a dangerous place where inmates are at risk of serious bodily injury or death by other inmates every day.
4. Due to the dangerous environment at high security USPs, including USP Can[a]an, it is common for inmates at these facilities to carry a weapon or have access to a weapon.

(Doc. 69-1 at 3). Defendant's notice also outlined Gibson's experience as a former BOP worker for 32 years. (Doc. 69-1).

On October 23, 2025, the Government filed the present motion *in limine* to preclude Gibson's testimony, as well as its brief in support. (Docs. 68-69). The Government also provided the court with security camera footage from USP Canaan of the incident at issue. (Doc. 70).

On November 6, 2025, Defendant filed his brief in opposition. (Doc. 69).

While the Government's reply brief is due November 20, 2025, trial is set for November 17, 2025. Furthermore, the court does not find that a reply brief is necessary to rule on the present motion. Thus, the motion is ripe for review.

**II.   LEGAL STANDARD**

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. *Abrams v. Lightolier*, 50 F.3d 12-4, 1213 (3d Cir. 1995); *Bernardsville Bd. Of Educ. V. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." *Ridolfi v. State Farm Mutual Auto. Ins. Co.*, 2017 WL 3198006, *2 (M.D.Pa. 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *United States v. Tartaglione*, 228 F.Supp.3d at 406. "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

### III.  DISCUSSION

Central to the issue here is Rule 702 of the Federal Rules of Evidence, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> 
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> 
> (b) the testimony is based on sufficient facts or data;
> 
> (c) the testimony is the product of reliable principles and methods; and
> 
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Government notes, "[d]istilled to its essence, 'Rule 702 embodies a trilogy of restrictions on expert testimony: qualification,

- 4 -

reliability, and fit.'" (Doc. 69 at 4) (quoting *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Litig.*, 509 F.Supp.3d 116, 130 (D.N.J. 2020).

While the parties make arguments regarding reliability, an analysis of fit alone is sufficient here. Fit requires that expert testimony be helpful, i.e., "sufficiently tied to the facts of the case [such that] it will aid the jury in resolving a factual dispute." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010). The court will assess each of the opinions that Defendant indicated that Gibson "is expected to testify to," (Doc. 69-1 at 3), under the fit prong of Rule 702.

### a. Proper staff procedure for a physical altercation at a high security federal prison

Defendant expects Gibson to testify that "It is proper procedure for correctional officers at a high security USP, including USP Canaan, to secure the area and request the assistance of additional staff before breaking up a physical altercation between inmates." (Doc. 69-1 at 3). Such an opinion will be precluded as it will not help the jury "to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).

The actions of the correctional officers are not at issue in this case. Defendant argues that their behavior is relevant to the issue of self-defense because Defendant's knowledge that the officers would not intervene tends

to demonstrate that Defendant was reasonable in his actions because he had a reasonable fear of death or serious bodily injury, and he had no reasonable opportunity to avoid harm without committing the act. (Doc. 74 at 4) (internal citation omitted). Further, he argues:

> It is certainly not intuitive to a lay person that a CO [correctional officer] would not immediately attempt to break up a fight between inmates or provide protection to an inmate who has been attacked by another inmate. However, a *reasonable* person in *[Defendant's] position*, as an inmate who has been incarcerated in federal prisons since 2002, knows that COs follow this protocol.

*Id.* (emphasis in original). While the average lay juror would not know proper staff procedures within a federal prison, the court disagrees that Gibson's testimony on the matter is necessary.

The security camera footage of the incident clearly shows that officers did not and were not going to intervene in the fight. Whether or not it was proper protocol is irrelevant. Further, Defendant's knowledge or lack thereof of protocol is similarly irrelevant, as the reality of non-intervention in that moment was clear. The jury will be able to watch the events unfold, assess the lack of intervention, and determine whether the lack of intervention made Defendant's actions reasonable, without need for Gibson's testimony.

### b. Likelihood of additional prisoners engaging in an ongoing altercation

Defendant also expects Gibson to testify that "At a USP, it is common for other inmates to join an attack on another inmate after it has been initiated." (Doc. 69-1 at 3). Such testimony would be irrelevant, confusing, a waste of time, and unhelpful to the jury.

The security camera footage clearly shows all other inmates in the area swiftly return to their cells when Defendant and the victim began fighting. In the court's opinion, there was no imminent threat of harm from any additional prisoners to Defendant, nor any reason for Defendant to expect there was. Furthermore, to the extent there was any, the court is not persuaded that such a threat has any tendency to make Defendant's actions with respect to the victim any more reasonable. Presenting evidence about the likelihood of additional prisoners joining in the fight would only serve to confuse the issues, as no one joined in here.

### c. Dangerousness of high security federal prisons

Defendant further expects Gibson to testify that "High security prisons, including USP Canaan, [are] [sic] dangerous place[s] where inmates are at risk of serious bodily injury or death by other inmates every day." (Doc. 69-1 at 3). The Government argues that "[t]here is no dispute that a high-security federal prison is a 'dangerous place' properly defined," and that jurors'

- 7 -

common sense will inform them of the dangers of federal prison. (Doc. 69 at 9). In response, Defendant argues that "[t]he assumption that jurors will be aware of the danger of physical violence faced by inmates at USP Canaan is purely speculative. To the contrary, jurors may presume a 'high security' prison means highly secure or safe." (Doc. 74 at 6).

Having Gibson testify as to the dangerousness of a high security prison would unquestionably waste the jury's time. Common sense does indeed lend itself to a presumption that prison is dangerous, regardless of the security level. Furthermore, to the extent that a juror may think a high security prison is somehow safe, they will not need an expert to dispel such a notion at trial. As the Government aptly puts it: "the jury will be able to glean from the [security camera footage] the dangerousness of USP Canaan, as they observe [the victim] approach with a combination lock and [Defendant] stab him to death with a shank." (Doc. 69 at 9). Indeed, the dangerousness of prison is inherent to this case.

### d. Commonality of armed inmates at high security federal prisons

Finally, Defendant expects Gibson to testify that "[d]ue to the dangerous environment at high security USPs, including USP Can[a]an, it is common for inmates at these facilities to carry a weapon or have access to a weapon." (Doc. 69-1 at 3).

- 9 -

The court finds that such testimony would also be irrelevant and unhelpful to the jury. Common sense, again, leads to the conclusion that inmates often possess weapons such as "shanks." Furthermore, that Defendant and the victim had weapons is clear from the security camera footage. Finally, the court does not see how the commonality of weapon possession in prison has any bearing on this case. Such information does not connect to any element of the crimes charged or aid in any defense.

IV.   **CONCLUSION**

For the foregoing reasons, the Government's motion will be **GRANTED**. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 13, 2025**
24-239-02