## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**     :

    **v.**     :     **CRIMINAL NO. 3:24-239**

**BRYANT WILSON,**     :     **(JUDGE MANNION)**

      **Defendant**     :

### <u>MEMORANDUM</u>

Pending before the court is the Government's motion *in limine* to preclude the expert testimony of Dr. Stephen Timchak, a psychologist for the defense. (**Doc. 78**). For the reasons stated herein, the Government's motion will be **GRANTED**, and the witness will be precluded from testifying. Additionally, Defendant will be precluded from himself testifying to his mental abnormalities and any link between them and the offenses charged, and defense counsel will be precluded from making any argument directing the jury to consider whether evidence of Defendant's mental abnormalities negates *mens rea*.

### I.     BACKGROUND

Defendant Bryant Wilson (hereinafter "Defendant") is charged with voluntary manslaughter, in violation of 18 U.S.C. §1112, and possession of contraband in prison, in violation of 18 U.S.C. §1791(a)(2), following a prison fight at USP Canaan that resulted in the stabbing death of Defendant's victim

on November 28, 2021. (Doc. 1). Defendant does not contest that the fight happened, nor that the death of his victim resulted; rather, he asserts that he acted in self-defense.

On November 10, 2025, Defendant notified the Government that he wishes to offer the expert testimony of Dr. Timchak at trial, pursuant to Rule 702 of the Federal Rules of Evidence. (Doc. 79-1). He indicated that Dr. Timchak would testify to Defendant's symptoms consistent with Post Traumatic Stress Disorder ("PTSD"). *Id.* Defendant's notice also outlined Dr. Timchak's experience and training as a psychologist. *Id.*

On November 12, 2025, the Government filed the present motion *in limine* to preclude Dr. Timchak's testimony, as well as its brief in support. (Docs. 78-79). On November 13, 2025, Defendant filed his brief in opposition. (Doc. 83). Finally, on November 14, 2025, the Government filed its reply brief. (Doc. 84). Thus, the motion is ripe for review.

## II.    LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017). On a motion *in limine*, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary

rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. *Abrams v. Lightolier*, 50 F.3d 12-4, 1213 (3d Cir. 1995); *Bernardsville Bd. Of Educ. V. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." *Ridolfi v. State Farm Mutual Auto. Ins. Co.*, 2017 WL 3198006, *2 (M.D.Pa. 2017). Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *United States v. Tartaglione*, 228 F.Supp.3d at 406. "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

## III.    DISCUSSION

18 U.S.C. §17(a) codifies the affirmative defense of insanity, stating: "It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to

appreciate the nature and quality of the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense." Furthermore, §17(a) precludes mental defect evidence that does not support a legally acceptable theory of a lack of *mens rea*. *United States v. Pohlot*, 827 F.2d 889, 906 (3d Cir. 1987). Simply put, psychiatric evidence cannot serve as a defense unless it renders the defendant legally insane, and even if the defendant is deemed insane, such evidence is inadmissible unless it negates the *mens rea* of the crime charged.[1]

Here, the Government thoroughly analyzed this issue with respect to the *mens rea* requirement of voluntary manslaughter in its brief in support. Defendant did not dispute the Government's argument; instead, Defendant narrowly focused on admissibility of the psychiatric evidence for purposes of his self-defense claim. Thus, Defendant essentially conceded that his PTSD evidence does not truly negate *mens rea*. Given Defendant's concession, the court need not exhaustively analyze the issue in the present

---

[1] *See Pohlot*, 827 F.2d at 900 ("Only in the rare case, however, will even a legally insane defendant actually lack the requisite *mens rea* purely because of mental defect. As the House Report [on the Insanity Defense Reform Act] stated: 'Mental illness rarely, if ever, renders a person incapable of understanding what he or she is doing. Mental illness does not, for example, alter the perception of shooting a person to that of shooting a tree.' Similarly, a man who commits murder because he feels compelled by demons still possesses the *mens rea* required for murder." (internal citations omitted)).

memorandum. However, the court notes that it agrees with the Government's analysis that the PTSD evidence does not negate the *mens rea* for voluntary manslaughter and is thus inadmissible.[2] Simply, PTSD does not constitute insanity, nor does PTSD negate the *mens rea* for voluntary manslaughter. The court posits, as a theory, that PTSD could have inflamed Defendant's reaction such that he carried out the killing in the heat of passion. In other words, PTSD likely offers an explanation, not a negation.

While the court's analysis need not go further—as Defendant neither claims he is insane, nor that the relevant *mens rea* was negated by his mental condition—the court will briefly address Defendant's argument that the PTSD evidence should be admitted for purposes of a self-defense argument.

In making his argument, Defendant relies on exclusively nonbinding out-of-circuit case law pertaining to battered woman's syndrome and duress. (Doc. 83). Defendant uses this case law to argue that because expert psychiatric testimony may be admissible in duress cases involving battered

---

[2] Specifically, the court agrees that "At best, [Defendant's] PTSD gives the jury an explanation for *why* he had the intent or reckless mental state to kill Spence in the heat of passion, not that he did not have the relevant *mens rea*." (Doc. 79 at 13-14). Nothing in Dr. Timchak's report indicates that the *mens rea* was negated. It merely indicates that Defendant may have an underlying condition that explains why he was able to carry out a killing.

woman's syndrome, such testimony should also be admissible in self-defense cases involving PTSD. The court disagrees.

As noted, the PTSD evidence does not negate *mens rea*, so it is inadmissible. Furthermore, Defendant's analogous reasoning does not hold up under scrutiny. As the Government notes,

> Battered woman's syndrome focuses on the perceived threat posed by the batterer on the battered, while PTSD, as shown by Dr. Timchak's report, focuses on a more general, perceptual perceived threat posed to the PTSD-sufferer by his surroundings . . . Here, [Defendant] was not under duress or defending himself against his "batterer" or someone who had assaulted him in the past. So [Defendant's] PTSD is much less probative to the disputed issues here than those in the cases relied on by the defendant.

(Doc. 84 at 5). Further, the burden of proving insanity is Defendant's. Defendant has failed to do so. Finally, "[s]elf-defense hinges on the reasonableness of the defendant's subjective beliefs." *Gov't of V.I. v. Smith*, 949 F.2d 677, 684 (3d Cir. 1991). Self-defense requires the jury to assess Defendant's actions by asking what an average reasonable person in Defendant's situation would do. This is an objective inquiry. It does not require the jury to ask what a reasonable person with PTSD would do, nor

what Defendant should be expected to do given his condition. Thus, Defendant's arguments fail.

Finally, even if the court were to find that PTSD negates the *mens rea* of voluntary manslaughter in this case, the psychiatric evidence would still be inadmissible as both irrelevant, under Rule 402 of the Federal Rules of Evidence, and confusing to the jury, under Rule 403. As the Government notes, Defendant's "proposed psychiatric evidence will tend to mislead the jury and confuse the issues by having the jury focus on [Defendant's] subjective psychological trauma and general PTSD symptoms as opposed to the objective reasonableness of his reaction . . . [or,] the PTSD evidence could lead a juror to excuse [Defendant's] conduct." (Doc. 79 at 19). The court agrees and finds that the evidence would confuse or mislead the jury. Furthermore, the jury will employ an objective standard in analyzing the reasonableness of Defendant's actions for both heat of passion and self-defense purposes. Therefore, the psychiatric evidence is irrelevant.

## IV.    CONCLUSION

For the foregoing reasons, the Government's motion will be **GRANTED**. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** *11/17/25*
24-239-03

- 8 -