**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 3:24-239** |
| **BRYANT WILSON,** | : | **(JUDGE MANNION)** |
| **Defendant** | : | |

## MEMORANDUM

Pending before the court is defendant Bryant Wilson's motion for new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, and for judgment of acquittal, pursuant to Rule 29. (**Doc. 96**). For the reasons stated herein, Defendant's motion will be **DENIED**.

## I.    BACKGROUND

On September 10, 2024, a grand jury charged defendant Bryant Wilson with voluntary manslaughter, in violation of 18 U.S.C. §1112, and possession of contraband in prison, in violation of 18 U.S.C. §1791(a)(2). (Doc. 1). The indictment stemmed from a November 28, 2021, fight at the United States Penitentiary Canaan in Waymart, Pennsylvania. After being attacked by Mr. Dominique Spence, Defendant repeatedly stabbed Spence with a "shank," resulting in Spence's death.

On November 17, 2025, a trial commenced. The Government presented a variety of evidence, including video surveillance footage of the

incident, (Gov't Ex. 1.1-1.3), the testimony of Specialists Edward Bocan and Anthony Fereno and Lieutenant Mark Turner, all of whom were present at the scene, the testimony of paramedic John Veina, who treated both Spence and Defendant following the fight, and the expert testimony of Dr. Edward Mazuchowski, a forensic pathologist who performed Spence's autopsy. Defendant also testified on his own behalf, and he was cross-examined by the Government. Ultimately, on November 18, 2025, the jury, considering the evidence presented and the court's instructions, returned a verdict of guilty on both counts. (Doc. 91).

On December 2, 2025, Defendant filed the present motion for new trial and judgment of acquittal, as well as his accompanying brief in support. (Docs. 96-97). On January 2, 2026, the Government filed its brief in opposition. (Doc. 102). Defendant failed to timely file a reply brief. The matter is thus ripe for disposition.

## II.    LEGAL STANDARD

### A. Rule 29 Motion for Judgment of Acquittal

"On a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must decide whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' based on the evidence presented at trial." *United States*

- 2 -

*v. Delgado*, 367 F.Supp.3d 286, 291 (M.D.Pa. 2019), aff'd 827 Fed.Appx. 180 (3d Cir. 2020) (citing *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). Further, "[t]he court must view the evidence in a light most favorable to the prosecution and must deny the motion 'if there is substantial evidence . . . to uphold the jury's decision.'" *Id.* (citing *Caraballo-Rodriguez*, 726 F.3d at 430 (quoting *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)). The court is required to "draw all reasonable inferences in favor of the jury's verdict," and "a finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.'" *United States v. Smith*, 294 F.3d 473, 476–77 (3d Cir. 2002) (internal citations omitted). Thus, the court "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *United States v. Fattah*, 914 F.3d 112, 183 (3d Cir. 2019) (citation omitted).

"Under this highly deferential standard of review, it is not the court's task to 'act as the thirteenth juror,' weigh credibility, assign weight to evidence, or 'substitute [its] judgment for that of the jury.'" *Delgado*, 367 F.Supp.3d at 291 (citations omitted). "The decision to overturn a conviction based on insufficient evidence may only be made 'where the prosecution's

- 3 -

failure is clear,' *United States v. Leon*, 739 F.2d 885, 890 (3d Cir. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)), or where the verdict 'fall[s] below the threshold of bare rationality,' *Caraballo-Rodriguez*, 726 F.3d at 431." *Id.* "Reversing the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges." *United States v. Garner*, 915 F.3d 167, 169 (3d Cir. 2019) (citation omitted).

### B. Rule 33 Motion for New Trial

Rule 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). "Granting or denying a motion for a new trial 'lies within the discretion of the district court.'" *Delgado*, 367 F.Supp.3d at 291 (quoting *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006)). "A court evaluating a Rule 33 motion does not view the evidence favorably to the government but instead must 'exercise[ ] its own judgment in assessing the Government's case.'" *Id.* (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). "[E]ven if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Silveus*, 542 F.3d 993, 1005

- 4 -

(3d Cir. 2008) (citation omitted). Further, "Rule 33 motions are disfavored and should be 'granted sparingly and only in exceptional cases.'" *Delgado*, 367 F.Supp.3d at 291 (citations omitted). "Exceptional cases include those in which trial errors 'so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *Id.* (quoting *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993)).

## III.    DISCUSSION

Defendant argues that he is entitled to a judgment of acquittal, or, in the alternative, a new trial, because:

> no rational trier of fact could have found the essential elements to the crimes charged beyond a reasonable doubt. More specifically, no rational trier of fact could have found that [Defendant's] actions resulting in the death of Mr. Spence were not justified by self-defense.

(Doc. 91 at 4). The Court disagrees.

### A. A reasonable juror could have found the essential elements to the crimes charged beyond a reasonable doubt.

With respect to the charge of voluntary manslaughter, the Government had the burden of proving beyond a reasonable doubt that: (1) "the defendant unlawfully killed Dominique Spence as charged," (2) "the defendant

intentionally did so without malice, that is, upon a sudden quarrel and in the heat of passion," and (3) "that the killing occurred in the special maritime and territorial jurisdiction of the United States." (Doc. 93 at 44).

In proving the elements of the offense, the Government presented ample evidence, including: video surveillance footage, which depicted a fight between Defendant and Mr. Spence, initiated by Spence swinging at Defendant's head with a padlock in a sock, and Defendant using a shank to repeatedly stab Mr. Spence after he had already subdued Spence; the testimony of Specialists Bocan and Ferone, who were present at the scene; the testimony of Lt. Turner, who came to the scene and was in charge of the prison response to the altercation; the testimony of paramedic Veina, who treated both Spence and Defendant after the fight; and the expert testimony of Dr. Mazuchowski, a forensic pathologist, who performed Spence's autopsy and concluded that Spence's death was caused by Defendant stabbing him. This evidence, taken in its totality, sufficed for the jury to conclude, beyond a reasonable doubt, that Defendant killed Mr. Spence upon a sudden quarrel and in the heat of passion in a United States Penitentiary. In other words, a reasonable juror could conclude that the Government met its burden.

With respect to the charge of possession of contraband in prison, the Government was required to prove beyond a reasonable doubt that: (1) "at the time stated in the Indictment, defendant was an inmate in a federal prison," (2) "that defendant knowingly possessed the object identified in the Indictment, that is, an approximately seven-inch piece of metal sharpened to a point, commonly known as a 'shank,'" and (3) that "possession of the shank was prohibited." (Doc. 93 at 66). The video surveillance evidence showed Defendant remove the shank from his waistband and use it against Spence, which was corroborated by eyewitness testimony from prison officials. The shank itself was also admitted as physical evidence at trial. (Gov't Ex. 2.1). The court finds that a reasonable juror could have found that the elements of the crime charged were proven beyond a reasonable doubt by the Government. Consequently, a judgment of acquittal, or a new trial, would be an incorrect application of the law.

Furthermore, while the Government sustained its burden in its case-in-chief, Defendant's own testimony provided further reason for a rational jury to find the crimes proven beyond a reasonable doubt. Defendant acknowledged that the video depicted him stabbing Spence numerous times after being attacked by Spence, that he possessed a shank, and that he used the shank against Spence. Simply put, Spence admitted to the possession

- 7 -

of contraband charge, and admitted to all the elements of the voluntary manslaughter charge except for the killing being "unlawful." He instead argued that he was justified by self-defense, which is discussed below.

### B. A reasonable juror could have found that Defendant's actions were not justified by self-defense.

Defendant asserts that "no rational trier of fact could have found that [Defendant's] actions resulting in the death of Mr. Spence were not justified by self-defense." (Doc. 97 at 4). The court disagrees.

The court instructed the jury that "The law recognizes the right of a person who is not the aggressor to stand his ground and use force to defend himself or another. However, he may use only such force as is reasonably necessary to defend himself or another person against the imminent use of unlawful force." (Doc. 93 at 56). Further, the court instructed the jury that they "must find beyond a reasonable doubt that the government has satisfied its burden of proving that the defendant did not act in self-defense." *Id.* at 56-57.

In sustaining its burden, the Government showed the surveillance footage of the fight between Defendant and Spence. A reasonable juror could watch that video and conclude that Defendant quickly disarmed Spence, gained the upper-hand, and not only became the aggressor, but

- 8 -

stabbed Spence many times afterward. Indeed, the fight lasted about a minute, but after the first ten seconds, Spence did not attempt to strike Defendant. Instead, Defendant struck and stabbed Spence repeatedly, causing ten stab wounds and five cuts. The jury, therefore, could have rationally concluded that Defendant used more force than necessary to defend himself, rendering his actions, at least, no longer self-defense from the point that he became the aggressor.

Furthermore, Defendant's own testimony was that he "blank[ed] out." Therefore, the jury could reasonably find that Defendant did not "honestly, and in good faith" believe that he was in imminent danger.

Finally, Defendant argues that:

The government presented the testimony of Dr. Ma[z]uchowski, a forensic pathologist, who testified that the decedent's death was caused by a stab wound to the right side of the chest that punctured [Spence's] lung resulting in a collapsed lung and bleeding into the right chest cavity. However, the government failed to present evidence of when the injury that caused the decedent's death occurred during the 54 second incident. Thus, the jury was left to speculate as to whether the wound that caused the decedent's death occurred at the beginning, middle, or end of the physical altercation. This is significant since the issue for the jury's

- 9 -

determination is when [Defendant's] actions were no longer justified by self-defense.

(Doc. 97 at 4-5). The Government, on the other hand, claims that this characterization of Dr. Mazuchowski's assessment and testimony is false, and that while Dr. Mazuchowski did testify that the wound to the chest was the most severe, he also testified that Spence's death resulted from the combination of Spence's cuts and stab wounds, which caused blood loss, cardiac arrest, and death. (Doc. 102 at 19). The Government is correct. When asked his opinion about Mr. Spence's cause of death, Dr. Mazuchowski testified that it was "sharp force injuries." Trial Tr. Nov. 18, 2025, at 18, ¶¶ 15-16. He was later asked: "Understanding that the combination of these 15 sharp force injuries led to Mr. Spence's death, were there any that you found particularly serious?" *Id.* at 27, ¶¶ 6-8. Dr. Mazuchowski answered that the "most severe out of these is the . . . stab wound to the right chest." *Id.*, ¶¶ 9-10.

Furthermore, even if Dr. Mazuchowski had testified that the stab wound to the right chest was the direct cause of Spence's death, and even if that injury occurred at the beginning of the fight, there was still sufficient evidence for a reasonable juror to conclude that the combined fifteen injuries—which were sustained up to the end of the fight, when Spence was

- 10 -

unarmed, on the ground, and still being stabbed by Defendant—were the combined cause of death, rather than the chest wound alone, and that a sufficient number occurred after Defendant became the aggressor. The court will not speculate as to exactly when the jury concluded Defendant was no longer justified by self-defense. However, the court finds that a reasonable juror could have concluded that Defendant lost the defense early in the fight and before multiple substantial wounds were sustained by Spence, and that the combined effect of those wounds was death. Finally, the court notes that paramedic Veina testified that Defendant sustained only minor injuries from the fight, which a reasonable juror could understand as significant, given the stark difference in physical condition between Defendant and Spence after the fight, which could lend itself to the conclusion that Defendant's actions were not proportional.

Thus, a reasonable juror could have reasonably found that the Government sustained its burden of proving beyond a reasonable doubt that Defendant did not act in self-defense. Consequently, a judgment of acquittal, or a new trial, would be contrary to law.

- 12 -

## IV.    CONCLUSION

For the aforementioned reasons, Defendant's motion for new trial and for judgment of acquittal, will be **DENIED**. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 4/6/26

24-239-04